**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2017**

# In the Court of Appeals of Georgia

A17A0917. INTERCONTINENTAL SERVICES OF DELAWARE, LLC v. KENT.

BETHEL, Judge.

Intercontinental Services of Delaware, LLC ("Intercontinental") brings this interlocutory appeal from a trial court order denying its motion to dismiss for lack of personal jurisdiction. Intercontinental argues that the trial court erred when it determined that Georgia courts could exercise personal jurisdiction over it pursuant to OCGA § 9-10-91 (1) and (3). Specifically, Intercontinental argues that the court erred when it determined that Intercontinental, through its ongoing business activities and its allegedly tortious acts giving rise to this suit, had transacted business in Georgia and that it had committed a tortious injury in Georgia while regularly soliciting business in Georgia, engaging in a persistent course of conduct in Georgia,

and deriving substantial revenue from services provided in Georgia. Because we agree that Georgia courts cannot exercise personal jurisdiction over Intercontinental pursuant to either provision of the Georgia long-arm statute, we reverse.

A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43(b). If the trial court conducts an evidentiary hearing, it may resolve disputed factual issues, and we will show deference to those findings. On the other hand, where, as here, a motion is resolved based solely upon written submissions,[1] the reviewing court is in an

---

[1] In this case, the court permitted the parties to engage in limited discovery on the jurisdictional issue. That discovery included a deposition given by an executive from Intercontinental, who also provided an affidavit regarding Intercontinental's

2

equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard, and we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction.

*Hyperdynamics Corp., v. Southridge Capital Mgmt., LLC*, 305 Ga. App. 283, 283-84 (I) (699 SE2d 456) (2010) (citations, footnote, and punctuation omitted).

The underlying lawsuit was brought by Leanne Kent. The record before us (including the allegations stated in her complaint) shows that her husband, Cleston Kent, was working for a company that had been hired to unload a shipment of borax from a railcar that had stopped in Sandersville, Georgia. The borax on board the train had been sold by Etimine U.S.A., Inc. ("Etimine"), a company that had contracted with Norfolk Southern Railway Company ("Norfolk Southern") to ship the borax to Georgia from Delaware. The railcar, which was owned by Norfolk Southern, was loaded by Intercontinental at a warehouse in Delaware. After the borax was loaded onto the railcar, Norfolk Southern transported the railcar to Sandersville, Georgia. In Sandersville, while the railcar was still partially loaded with borax, it derailed and overturned, pinning Cleston Kent underneath. Cleston Kent was killed as a result.

business activities. The trial court did not conduct an evidentiary hearing on this matter.

3

Leanne Kent filed a wrongful death action against Intercontinental and several other parties. Intercontinental answered the complaint, and moved to dismiss the claims against it, arguing that there was no basis for Georgia courts to exercise personal jurisdiction over it. Intercontinental specifically argued that personal jurisdiction in Georgia was improper because (1) it is a Delaware business that does not own any property or have offices in Georgia, (2) its business operations take place entirely in facilities located in Wilmington, Delaware, and (3) it neither owned or transported the borax that was in the railcar.

The parties engaged in limited discovery in regard to Intercontinental's business activities and the scope of its operations. Testimony and other evidence brought forward in discovery reflects that Intercontinental is a Delaware limited liability company and that its place of business is in two facilities at and adjacent to the Port of Wilmington in Delaware. It has no property or employees in Georgia, it is not registered to do business in Georgia, and it does not have an agent for service of process in Georgia. Intercontinental's business consists entirely of unloading cargo from ships that arrive in the Port of Wilmington, storing the cargo in facilities close to the port, and, at the direction of Intercontinental's customers, loading the cargo onto outbound forms of transportation, including trucks and railcars owned by its

4

customer or third parties. It neither manufactures nor sells any goods, nor does it own trucks or transport any products to any location outside the immediate vicinity of the Port of Wilmington. Throughout the provision of its services, Intercontinental never takes title to any of the cargo in its possession, nor does it arrange or pay for shipments of any products. All shipments are arranged and paid for by Intercontinental's customers. The entire process of unloading the cargo from a ship, storing it on-site, and reloading it onto outbound transportation takes place entirely at the Port of Wilmington in Delaware or at a storage facility located approximately one-half mile away.

The record also shows that Intercontinental does not provide its services in any other physical location. Specifically, the record shows that it provides no services from any location in Georgia. Although Intercontinental provides its loading and storage services to one customer headquartered in Georgia, it does so exclusively from its headquarters at the Port of Wilmington. With regard to its customer in Georgia, Intercontinental's work on behalf of that customer consisted of handling, storing, and loading cargo onto trains at the Port of Wilmington that were destined for locations in the northeast United States.

Intercontinental advertises its services through an online website. However, the website does not permit a potential customer to place an order through it. Intercontinental does not maintain sales agents or make any active solicitations of customers in Georgia whether by placing advertisements, making calls, sending emails, or otherwise. A representative of Intercontinental stated that it typically obtains new customers by word of mouth.

With regard to the specific cargo and shipment at issue in this case, the record shows that, pursuant to a contract with Etimine, Intercontinental unloaded a shipment of borax owned by Etimine after it arrived in the Port of Wilmington. That borax was moved to a storage location adjacent to the port, and periodically, Etimine directed Intercontinental to load some portion of that borax for shipment.

For the specific shipment involved in this case, Etimine contracted with Norfolk Southern to pick up a load of the borax from Intercontinental. Intercontinental generated the bill of lading for the load through Norfolk Southern's website as part of its services to Etimine. That bill of lading listed Intercontinental as the "shipper." However, a second bill of lading, referred to as a "straight bill of lading," listed Etimine as the "shipper." A representative of Intercontinental stated that the first bill of lading identified Intercontinental as the shipper because the

shipment was set to originate from Intercontinental's facility. The bills of lading completed by Intercontinental listed Georgia as the ultimate destination for the cargo.

Following a motion hearing, the trial court determined that Georgia courts could exercise personal jurisdiction over Intercontinental pursuant to the Georgia long-arm statute. The trial court specifically found that personal jurisdiction over Intercontinental was proper because it found that Intercontinental had transacted business in Georgia by loading the railcars in Delaware and that it regularly does or solicits business or engages in other persistent conduct in Georgia, due to its history of loading railcars destined for Georgia, soliciting business through its website, and its business relationship with a client headquartered in Georgia. Following this order, the trial court filed a certificate of immediate review, and this Court granted Intercontinental's application for interlocutory appeal. This appeal followed.

1. Intercontinental first argues that the trial court erred when it determined that personal jurisdiction over it was proper under OCGA § 9-10-91 (1) . We agree.

OCGA § 9-10-91 (1) provides that

[a] court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state,

7

> if in person or through an agent, he or she . . . [t]ransacts any business within this state[.]

Prior decisions of this Court and the Georgia Supreme Court have given broad reach to this provision, holding that it extends the jurisdiction of Georgia courts to "the maximum limits permitted by due process." *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 135 (1) (a) (661 SE2d 185) (2008) (citing *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames*, 279 Ga. 672, 675 (620 SE2d 352 (2005)). However, such limits do exist, and this Court is compelled to recognize and enforce them. As the Supreme Court discussed in *Innovative Clinical*, because a literal reading of OCGA § 9-10-91 (1) would grant Georgia courts "the unlimited authority to exercise personal jurisdiction over any non-resident who transacts any business in this State," such a limitless reading would "expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process[.]" *Innovative Clinical*, 279 Ga. at 675.

Accordingly, when determining the limits of procedural due process, we apply the following three-part test:

> Jurisdiction exists on the basis of transacting business in this State if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this State, (2) if the cause of action

arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this State does not offend traditional notions of fairness and substantial justice.

*Sullivan v. Bunnell*, 340 Ga. App. 283, 286 (797 SE2d 499) (2017) (footnote omitted). As this Court recently explained in *Sullivan*, the first two prongs of this test are analyzed to determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction." *Id.* (footnote omitted). If such minimum contacts exist, we then consider the third prong to consider whether "the exercise of jurisdiction is reasonable—that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts." *Id.* (footnote and punctuation omitted).

In this case, we disagree with the trial court's characterization of Intercontinental's business activities. In its order denying Intercontinental's motion to dismiss, the trial court concluded that "[Intercontinental] performed the purposeful act of sending a chemical product into the stream of commerce with express knowledge that the product would end up in Georgia to be sold or used there." While Intercontinental was indisputably involved in the process by which Etimine's product

9

made its way to Georgia, we do not agree that it was Intercontinental that placed that product into the stream of interstate commerce.

We note that this body of law continues to evolve in light of the growth of the service sector in the United States and the advent of advanced communication and information technologies. However, for purposes of personal jurisdiction analysis, this Court's prior decisions have drawn a critical distinction between manufacturers and sellers of a physical product and persons or entities that provide a site-specific service, even if such service involves or relates to products that will travel to Georgia.

For instance, in *McDonnell v. Roy E. Beatty & Assoc., Inc.*,[2] this Court upheld the trial court's dismissal of a wrongful death complaint for lack of personal jurisdiction where the decedents were killed when an airplane crashed soon after takeoff from an airport in Georgia. The plaintiffs brought suit against a Florida corporation who owned the plane and leased it to another Florida corporation that was owned and operated by the decedents. *Id*. at 808 (1). Under the terms of the lease, the defendant was required to provide service and maintenance for the plane. *Id*. at 809 (1). The defendant's only place of business was in Florida, and it never operated in Georgia. *Id*. at 808 (1). Although the record made clear that the defendant in

_____

[2] 203 Ga. App. 807, 807-11 (1) (418 SE2d 95) (1992).

10

*McDonnell* knew the plane would go to Georgia and be used in Georgia, this Court nonetheless found that the exercise of personal jurisdiction over the defendant would be improper. *Id*. at 809-10 (1).

In so doing, this Court emphasized that the defendant in *McDonnell* "conducted no business and engaged in no activity in Georgia" that could justify the exercise of jurisdiction. *Id*. at 808.[3] The Court also expressly contrasted *McDonnell* with other cases in which the defendant introduced or carried a product into the stream of commerce and therefore availed itself of the market for its product in Georgia. *Id*. at 810-11 (comparing facts in *McDonnell* to those in *Showa Denko K.K. v. Pangle*, 202 Ga. App. 245 (414 SE2d 658) (1991) and *Value Engineering Co. v. Gisell*, 140 Ga. App. 44 (230 SE2d 29) (1976)). This aligned with other decisions of this Court which have emphasized that mere knowledge on the part of the defendant that certain items or materials will find their way to Georgia is an insufficient basis for exercising personal jurisdiction over that defendant. *See Sky Shots Aerial Photography, Inc. v. Franks*, 250 Ga. App. 411, 412 (551 SE2d 805) (2001).

---

[3] *See also Gee v. Reingold*, 259 Ga. App. 894, 896 (1) (578 SE2d 575) (2003) (no personal jurisdiction over defendant who performed legal services for plaintiff in Tennessee on non-Georgia matters).

11

In this case, the record established that Intercontinental provides no services in Georgia or, in fact, anywhere outside the Port of Wilmington and its immediate vicinity in Delaware. Intercontinental neither manufactures nor sells any product, and its services are provided by personnel located exclusively in Delaware. It never takes title to any of the products it handles, and it provides its services at the direction of its customers. Even though Intercontinental completes a variety of ministerial tasks, including filling out bills of lading for shipments it loads on behalf of customers, Intercontinental does not arrange or pay for such shipments–that is entirely the responsibility of Intercontinental's customers. In the course of providing its services, Intercontinental does not contract with third-party transportation companies or with any end-user of its customer's products. Although shipments loaded by Intercontinental make their way to Georgia, these activities by Intercontinental cannot be reasonably characterized as creating purposeful contact with Georgia.

Intercontinental's more general contacts with Georgia and residents thereof are also limited. The record established that Intercontinental has one customer that is headquartered in Georgia. However, in keeping with its regular practice, its services for that customer are limited to unloading, storage, and reloading services at the Port of Wilmington. *McDonnell* suggests that this minimal connection with Georgia is not

12

a purposeful act that would allow Georgia courts to exercise personal jurisdiction over Intercontinental.

The record also established that Intercontinental maintains a website on which it advertises its services. However, its website is not "interactive," in that it does not permit a potential customer to place an order with Intercontinental directly through the website. As this Court noted in *American College Connection, Inc. v. Berkowitz*,[4] "[a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." This is in contrast with "situations where a defendant clearly does business over the Internet . . . enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" or operates "interactive Web sites where a user can exchange information with the host computer." *Id*. at 871-72.

There was also no evidence in the record that Intercontinental advertises directly in Georgia, that it maintains any sales force or agency in Georgia, or that it places sales calls or sends marketing messages by the postal service or through email to potential customers in Georgia. *Cf. Lima Delta Co. v. Global Aerospace, Inc.*, 325

---

[4] 332 Ga. App. 867, 871 (775 SE2d 226) (2015) (footnote omitted).

Ga. App. 76, 80-82 (1) (752 SE2d 135) (2013) ("Georgia now allows the assertion of long-arm jurisdiction over nonresident defendants, based on business conducted by the defendant or its agent through postal, telephonic, and Internet contacts."); *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 535 (1) (680 SE2d 571) (2009) (personal jurisdiction proper where defendant "intentionally sought business in [Georgia] and placed . . . its agent" in a position to deal with the potential Georgia customer).

With regard to the specific occurrence giving rise to this suit, Intercontinental's only relevant agreement was with Etimine, and that agreement was limited to the services it provided for Etimine in regard to the borax that arrived at the Port of Wilmington. The record does not reflect any relevant agreement between Intercontinental and Norfolk Southern or any other carrier or with the company in Georgia that purchased the borax from Etimine.

On these facts, we cannot say that Intercontinental transacted any business in Georgia by conducting the activities described above. Moreover, we cannot say that Intercontinental has availed itself of the privilege of doing business in Georgia through the general conduct of its operations and its marketing activities. Such activities have not created the substantial connection with Georgia that is required

14

before the exercise of personal jurisdiction by Georgia courts is proper. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (II) (A) (107 SCt. 1026, 94 LE2d 92) (1987). Therefore, because Georgia courts cannot exercise personal jurisdiction over Intercontinental under OCGA § 9-10-91 (1), we agree with Intercontinental that the trial court erred.

2. Intercontinental also argues that the trial court erred when it determined that personal jurisdiction over it was proper under OCGA § 9-10-91 (3). We agree.

OCGA § 9-10-91 (3) provides that

[a] court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she . . . [c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

As we noted in Division 1, *supra*, with regard to the trial court's analysis under OCGA § 9-10-91 (1), the trial court mischaracterized the nature of Intercontinental's business. As a result, the cases it cites are inapposite to the issues before us.

15

Relying heavily on this Court's decision in *University of Iowa Press v. Urrea*,[5] the trial court concluded that Intercontinental had done business and maintained a persistent course of conduct in Georgia because it placed products into the stream of commerce. In *Urrea*, the defendant, a publisher, sold copies of a book written by the plaintiff to customers in Georgia. *Id*. at 565. It also "sold other works published by it to bookstores in Georgia." *Id*. at 565 (1). This Court found that those activities subjected the defendant to personal jurisdiction in Georgia. *Id*.

*Urrea* is clearly distinguishable from this case because Intercontinental does not sell physical products. Moreover, the product at issue in this case, the shipment of borax, was sold through a contract between Etimine and its customer–Intercontinental had no relationship with Etimine's Georgia customer.

Additionally, even though the record indicates that Intercontinental maintains a customer relationship with a company headquartered in Georgia, that alone is not enough to establish that it maintains a "persistent course of conduct" in Georgia. *See Gee*, 259 Ga. App. at 897 (2) (b). Its services for that customer, like those it performed for Etimine, take place entirely in Delaware. There is no evidence in the record that Intercontinental has ever provided services of any kind to that customer

---

[5] 211 Ga. App. 564, 565 (1) (440 SE2d 203) (1993).

(or any other customer) from a location within Georgia. *See McDonnell*, 203 Ga. App. at 807-11 (1).

Moreover, Intercontinental is a Delaware limited liability company, and it is not registered to do business in Georgia. It maintains no property or employees in Georgia. Thus, even though the record establishes that it has derived revenue from the relationship with its Georgia customer, because that revenue is not the fruit of services performed in Georgia, that alone cannot satisfy the requirements of OCGA § 9-10-91 (3). *McDonnell*, 203 Ga. App. at 810 (1). Additionally, because of the passive nature of Intercontinental's website and the absence of other marketing activities directed at Georgia, the record does not support the trial court's finding that Intercontinental regularly solicits business in Georgia. *Cf. Barton Southern Co., Inc. v. Manhole Barrier Systems, Inc.*, 318 FSupp2d 1174, 1177-78 (1) (N.D. Ga. 2004) with *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-24 (1) (631 SE2d 734) (2006).

Therefore, because there is no basis for the exercise of personal jurisdiction over Intercontinental under OCGA § 9-10-91 (3), we agree with Intercontinental that the trial court erred. As Georgia courts cannot exercise personal jurisdiction over Intercontinental under either subsection (1) or (3) of OCGA § 9-10-91, we reverse the

17

order of the trial court denying Intercontinental's motion to dismiss for lack of personal jurisdiction.

*Judgment reversed. McFadden, P. J., and Branch, J., concur.*