A09A2336. SOL MELIA, SA et al. v. BROWN et al.
A09A2337. SOL MELIA, SA et al. v. GIL.
A09A2338. SOL MELIA, SA et al. v. SMAHA et al.

(688 SE2d 675)

MIKELL, Judge.

Sol Melia, SA d/b/a Sol Melia Hotels & Resorts ("Sol Melia"), and the Sol Group Corporation ("Sol Group") were sued in Georgia by Georgia residents[1] who were injured in an automobile accident in the Dominican Republic. Sol Melia filed a motion to dismiss the complaint for lack of personal jurisdiction. The trial court denied the motion, and we granted Sol Melia's application for interlocutory appeal. Because the exercise of jurisdiction over Sol Melia would offend due process, we reverse the trial court's judgment.

As the defendant moving to dismiss, Sol Melia bears the burden

---

[1] The plaintiffs/appellees are: Matt and Vida Brown, Reinaldo Gil, and Michelle and Jason Smaha.

of proving lack of jurisdiction.[2] A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction.[3]

> [W]hen the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence.[4]

We owe no deference to the trial court's judgment because the motion was decided on the basis of the written submissions.[5] Any factual disputes raised by the evidence must be resolved in the plaintiffs' favor.[6]

Thus viewed, the record shows that Sol Melia is a Spanish corporation and its principal place of business is in Spain. Sol Group, which is not a party to this appeal, is a Delaware corporation with its principal place of business in Florida. Sol Group is registered to do business in Georgia and has a registered agent for service of process in this state. Through a subsidiary, Sol Melia owns a majority interest in the parent company of Inversiones Areito ("Areito"), which in turn owns and operates the Paradisus Palma Real Resort (the "Resort"), a hotel in Punta Cana, Dominican Republic. The plaintiffs vacationed at the Resort in April of 2006. They purchased from Areito a "Royal Service Package" (the "Package"), which included meals, club-level rooms, and upgraded concierge services. The package did not include the cost of airfare or transportation from the airport to the Resort. However, an Areito employee at the Resort reserved a taxi for the plaintiffs when they checked out. The taxi was owned and operated by Taxi Vernon, a Dominican entity, and the driver was employed by Taxi Vernon. On the way to the airport, the taxi was involved in a collision in which the plaintiffs were injured.

In their complaints, which were not verified, the plaintiffs alleged that the taxi driver's negligence and recklessness caused

---

[2] *ATCO Sign & Lighting Co. v. Stamm Mfg.*, 298 Ga. App. 528, 529 (680 SE2d 571) (2009).

[3] *Taeger Enterprises v. Herdlein Technologies*, 213 Ga. App. 740, 744 (1) (445 SE2d 848) (1994).

[4] (Citations omitted.) *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990).

[5] *ATCO Sign & Lighting Co.*, supra.

[6] Id. at 529.

their injuries; that the driver was Sol Melia and/or Sol Group's agent; that Sol Melia and/or Sol Group agreed to provide their transportation to the airport and breached a duty owed to the plaintiffs to exercise ordinary care "in the safe operation of the vehicle and in arranging for [their] airport transfer"; that Sol Group was Sol Melia's agent, servant, and representative and that Sol Group procured business and accepted payments for Sol Melia. In addition to counts of direct and vicarious liability, plaintiffs alleged counts of breach of contract and fraudulent representation.

Sol Melia tendered two affidavits in support of its motion to dismiss. Christelle Luchini, the Resort's Royal Service manager at the time of the underlying incident, averred that the Package, which plaintiffs purchased from Areito, included premium resort services, such as personalized assistance in planning tours and excursions, preferential spa, dinner, golf, and tennis reservations, and daily mail and newspaper delivery. Luchini further averred that the Package did not include airfare or the cost of transportation between the Punta Cana airport and the Resort; that Areito did not provide such transportation; but that an Areito employee working at the Resort arranged the plaintiffs' transfer to the airport by calling a taxi for them. The taxi was owned by Taxi Vernon and operated by a Taxi Vernon employee.

Juan Ignacio Pardo, Sol Melia's general counsel, averred that Sol Melia neither owns nor operates any hotel in the United States; is not authorized to do business in Georgia; conducts no sales, marketing, or promotional activities in Georgia; does not target Georgia residents, who represent less than 0.1% of the company's revenue; and does not advertise in Georgia newspapers or publications. Pardo averred that Sol Melia does operate an Internet web site that can be accessed by Georgians and through which customers can purchase vacation packages directly from the hotels that Sol Melia manages or owns in other countries. The plaintiffs, however, did not book their trips through the web site; instead, they called a toll-free 800 number managed by a third party, who sent their reservation information directly to Resort personnel in the Dominican Republic. Pardo also averred that Sol Melia never entered into any contract with the plaintiffs, never received any payment from them, and never paid anyone a fee or commission in connection with their booking. Finally, Pardo averred that Sol Melia does not own, operate or control the premises at the Resort and does not employ any of its employees; did not own, operate or control the taxi in which the plaintiffs were injured; and did not arrange for their transportation by taxi.

Plaintiffs submitted no affidavits in response to Sol Melia's affidavits. Instead, they submitted printouts of Sol Melia's web site and its annual reports showing that it owns Sol Group. Sol Melia's

2006 annual report calls its web site an "essential distribution channel for hotels." The site has a phone number for making reservations that includes "MELIA" and the copyright states "2008 resorts by Sol Melia."

1. Sol Melia argues that its contacts with Georgia are insufficient for a Georgia court to exercise jurisdiction over it under the long-arm statute, OCGA § 9-10-91. We conclude that the constraints of constitutional due process preclude the exercise of personal jurisdiction over Sol Melia under the facts of this case.

The Georgia long-arm statute pertinently provides that

[a] court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: (1) Transacts any business within this state.[7]

In *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames, Iowa ("Innovative")*,[8] our Supreme Court concluded that OCGA § 9-10-91 (1) "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this [s]tate."[9] Recognizing that "this statutory language would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process," the Court "construe[d] subsection (1) as reaching only to the maximum extent permitted by procedural due process."[10] "Due process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign."[11] The question is "whether a defendant could reasonably expect to be haled into court in a particular forum,"[12] based on its contacts with the state. The inquiry consists of a three-part test:

Jurisdiction exists ·if (1) the nonresident defendant has purposefully done an act or consummated a transaction in Georgia, (2) the cause of action arises from or is connected with the act or transaction, and (3) the Georgia court's

---

[7] OCGA § 9-10-91 (1).

[8] 279 Ga. 672 (620 SE2d 352) (2005).

[9] Id. at 675.

[10] (Citation, punctuation and emphasis omitted.) Id.

[11] (Punctuation omitted.) *Beasley*, supra at 421, citing *Burger King v. Rudzewicz*, 471 U. S. 462, 472 (II) (A) (105 SC 2174, 85 LE2d 528) (1985).

[12] *Beasley*, supra.

> exercise of jurisdiction does not offend traditional fairness and substantial justice.[13]

In other words, before a nonresident may be sued in Georgia, such nonresident "must have purposefully directed [its] activities at residents of the forum, and the litigation must result from alleged injuries that arise out of or relate to those activities."[14] The first two elements are used to determine whether the nonresident defendant has established the minimum contacts necessary for a Georgia court to exercise personal jurisdiction.[15]

We find in this case that Sol Melia has demonstrated the absence of the second requirement. In other words, the evidence shows that plaintiffs' claims of direct and vicarious liability for the taxi driver's negligence, breach of contract, and fraudulent misrepresentation do not arise out of and are not related to Sol Melia's alleged contacts with Georgia. We are unable to locate a Georgia case precisely on point. *Oldfield v. Pueblo De Bahia Lora, S.A.*,[16] a factually similar case recently decided by the Eleventh Circuit Court of Appeals, is instructive, however. In *Oldfield*, the plaintiff, a Florida resident, found an Internet web site for "Parrot Bay Village," which was owned by defendant Pueblo De Bahia Lora, S.A. ("Pueblo"), a Costa Rican corporation. The web site described the Village as a "unique sport fishing and rainforest eco-lodge."[17] Pueblo did not own or operate any fishing boats, although it represented that the fishing boats it chartered were operated by "U. S. licensed" captains.[18] The plaintiff booked a reservation through the web site and also made arrangements with a charter service for a fishing trip.[19] He was injured on the fishing trip and sued Pueblo, alleging that the boat captain's negligence caused his injury and that Pueblo was legally responsible for the captain's neglect.[20] The district court ruled that Pueblo had purposefully established minimum contacts with the United States, such that the exercise of "specific" jurisdiction would

---

[13] (Citation omitted.) *ATCO Sign & Lighting Co.*, supra at 529. Accord *Gateway Atlanta Apts. v. Harris*, 290 Ga. App. 772, 779 (3) (a) (660 SE2d 750) (2008).

[14] *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 48 (1) (581 SE2d 609) (2003). See also *Smith v. Smith*, 254 Ga. 450, 453 (3) (330 SE2d 706) (1985) ("plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum") (citation omitted).

[15] *Beasley*, supra.

[16] 558 F3d 1210 (11th Cir. 2009).

[17] (Punctuation and footnote omitted.) Id. at 1214 (I) (A).

[18] Id. at n. 3.

[19] Id. at 1214 (I) (A).

[20] Id. at 1214 (I) (B).

not offend constitutional due process.[21] In reversing, the appeals court employed a minimum contacts analysis and determined that the nexus between the plaintiff's injury and the Internet contact was too remote to satisfy the "relatedness" requirement.[22] Specifically, the court reasoned that sustaining an injury aboard a fishing boat that Pueblo neither owned nor operated was not a foreseeable consequence of the plaintiff's viewing the resort's web site, reserving a room there, and arranging for a fishing trip run by a third party.[23] The court concluded that

> [a] finding that such a tenuous relationship between Pueblo's relevant contacts and the negligence of the captain who was not employed or controlled by Pueblo somehow satisfied the relatedness requirement would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless.[24]

The due process requirements relied upon by the Eleventh Circuit in *Oldfield* are the same as those espoused by the Supreme Court of Georgia in *Beasley*,[25] which was cited with approval in *Innovative* as "explicating the minimum contacts required for the proper exercise of long-arm jurisdiction."[26] Applying the due process analysis to the instant case, it is clear that the injuries sustained by the plaintiffs are too remote from any of Sol Melia's contacts with Georgia to satisfy the relatedness requirement. The plaintiffs were injured in a taxi neither owned nor operated nor compensated by Sol Melia. Sol Melia did not arrange for their transfer to the airport; this was done by an Areito employee at the Resort. They had already checked out of the Resort and had paid the Resort directly for their accommodations and meals. The Package purchased by the plaintiffs did not include transportation between the Resort and the Punta Cana airport. Sol Melia did not enter into a contract with the

---

[21] Id. at 1217 (I) (B). See *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 521 (1) (631 SE2d 734) (2006) ("when a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the [s]tate is exercising specific jurisdiction over the defendant") (footnote omitted).

[22] *Oldfield*, supra at 1223 (II) (B).

[23] Id.

[24] (Citation omitted.) Id. at 1223-1224 (II) (B).

[25] Supra (although our three-part test is not a due process formula, it contains "helpful analytical tools which ensure that a defendant is not forced to litigate in a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts"), citing *Burger King*, supra, 471 U. S. at 475.

[26] *Innovative*, supra at 675.

plaintiffs to provide taxi service to the airport. Sol Melia's web site, a printout of which is in the record, does not advertise taxi service from the Resort to the airport. It simply states that the Resort is located 20 minutes away from the airport. Plaintiffs submitted no affidavits to counter Sol Melia's evidence, and they cannot rely upon the allegations in their unverified complaints to rebut Sol Melia's affidavits.[27] Accordingly, we conclude that the relationship between Sol Melia's relevant contacts with Georgia — i.e., its Internet web site — and the negligence of the taxi driver are too tenuous to satisfy the "relatedness" requirement. It follows that the exercise of personal jurisdiction would violate constitutional due process.

2. Although this litigation does not arise out of Sol Melia's contacts with Georgia, plaintiffs argue the exercise of "general" jurisdiction is proper, citing *Mitsubishi Motors Corp. v. Colemon*.[28]

As we recognized in *Colemon*, a state's exercise of general jurisdiction over a foreign corporation in a suit not arising out of or related to the corporation's contacts with the forum comports with due process if the corporation has sufficient contacts with the forum state.[29]

> [F]actors relevant to the existence of such jurisdiction include regularly doing business in the state, deriving substantial revenue from goods or services in the state, having agents or employees in the state, maintaining an office in the state, and having subsidiaries or business affiliates in the state.[30]

In *Colemon*, we relied on these factors in affirming the denial of the defendant's motion to dismiss. In that case, the plaintiff's decedent was killed while driving a Mitsubishi in Honduras, and the plaintiff brought a wrongful death action against Mitsubishi Motors Corporation ("Mitsubishi"), a Japanese corporation, in Georgia.[31] In its pleadings, Mitsubishi admitted that it designs and manufactures vehicles for use in Georgia; that it uses its wholly-owned subsidiary to distribute its vehicles here; and that the wholly-owned subsidiary has a registered agent for service of process in Georgia.[32] We concluded that Mitsubishi regularly transacted business in Georgia by distributing its vehicles here through the subsidiary, and this was

---

[27] See *McHale v. HJGM, Inc.*, 252 Ga. App. 641, 643 (2) (556 SE2d 853) (2001).

[28] 290 Ga. App. 86 (658 SE2d 843) (2008).

[29] Id. at 88-89 (1).

[30] (Footnote omitted.) Id. at 89.

[31] Id. at 86.

[32] Id. at 87 (1).

"precisely the kind of continuous and systematic business contact that justifies the exercise of general jurisdiction."[33]

The evidence here does not support an inference that Sol Melia has continuous and systematic business contact with Georgia such as would permit the exercise of general jurisdiction. Sol Melia has no officers, employees, or offices in Georgia, and the revenue it derives from Georgia residents — 0.1% — is not substantial. Sol Melia conducts sales and marketing activities primarily in Europe and does not conduct any such activities in Georgia. Sol Group manages the advertising and marketing of Sol-brand hotels in the United States.

Plaintiffs contend that Sol Melia controls Sol Group, so that the exercise of general jurisdiction is proper. In this regard,

> neither the Due Process Clause nor traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction over a parent corporation if the parent's control over the subsidiar[y's] activities is so complete that, the subsidiary is, in fact, merely a division or department of the parent.[34]

However, "[t]he law of corporations is founded on the legal principle that each corporation is a separate entity. Great caution should be exercised by the court in disregarding the corporate entity."[35] The allegations in the complaint,[36] as well as the documents showing that Sol Group and Sol Melia share the same Central and North American Division corporate office in Miami, do not permit an inference that Sol Group is "merely a division or department" of Sol Melia. Plaintiffs offered no other evidence to show that Sol Melia had "complete control" over Sol Group. In sum, we do not find Sol Melia's contacts with Georgia comparable to those of Mitsubishi, and as such, *Colemon* is distinguishable.[37]

3. Finally, the plaintiffs urge this Court to order further discov-

---

[33] (Footnote omitted.) Id. at 89 (1).

[34] (Citation and punctuation omitted.) *Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 151 (1) (460 SE2d 516) (1995) (court lacked personal jurisdiction over parent holding company where subsidiary operated in forum state). See also *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F3d 1286, 1293 (III) (11th Cir. 2000) ("It is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.") (citations omitted).

[35] (Punctuation and footnotes omitted.) *All Star, Inc. v. Fellows*, 297 Ga. App. 142, 148 (1) (a) (676 SE2d 808) (2009).

[36] See *McLain v. Mariner Health Care*, 279 Ga. App. 410, 411 (1) (631 SE2d 435) (2006) (in ruling on a motion to dismiss, the court must accept as true all well-pled material allegations in the complaint and must resolve any doubts in favor of the plaintiff).

[37] Cf. *Pratt & Whitney Canada v. Sanders*, 218 Ga. App. 1, 8-9 (460 SE2d 94) (1995) (McMurray, P. J., dissenting) (facts that defendant marketed its products, including the defective engine at issue in the case, to Georgia customers, kept spare parts and material in

ery in the event that we find the record insufficient to support jurisdiction. But this Court cannot address any issue on which the trial court did not rule. "This court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it."[38]

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

## DECIDED DECEMBER 18, 2009.

*Moore, Ingram, Johnson & Steele, G. Phillip Beggs*, for appellants.

*Locke, Lord, Bissell & Liddell, Nigel J. D. Wright, Elizabeth J. Campbell*, for appellees.

---

Georgia, and sent its employees here for ongoing customer relations, authorized exercise of personal jurisdiction); *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585, 588 (2) (b) (434 SE2d 778) (1993) ("substantial business" transacted by defendant in Georgia authorized exercise of personal jurisdiction).

[38] (Punctuation and footnote omitted.) *CDP Event Svcs. v. Atcheson*, 289 Ga. App. 183, 187 (2) (656 SE2d 537) (2008).