**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 6, 2014**

# In the Court of Appeals of Georgia

A13A2145. DRUMM CORP. f/k/a DRUMM INVESTORS, LLC v. WRIGHT, ADMINISTRATOR OF THE ESTATE OF BILLY WRIGHT et al.

BOGGS, Judge.

We granted the application for interlocutory review filed by Drumm Corp. f/k/a Drumm Investors, LLC ("Drumm") following the trial court's denial of its motion to dismiss for lack of personal jurisdiction. Because Drumm does not have sufficient "minimum contacts" with the State of Georgia, we reverse.

"A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction." (Citation, footnotes and punctuation omitted.) *Sol Melia, SA v. Brown*, 301 Ga. App. 760, 760-761 (688 SE2d 675) (2009). Drumm, as the defendant moving to dismiss, bears the burden of proving lack of jurisdiction.

Id. And "to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence." (Citation omitted.) *Yukon Partners, Inc. v. Lodge Keeper Group*, 258 Ga. App. 1, 2 (572 SE2d 647) (2002). "Where as here, the motion was decided on the basis of written submissions alone, any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction, and the appellate standard of review is nondeferential." (Citation omitted.) *Crossing Park Properties v. JDI Fort Lauderdale*, 316 Ga. App. 471 (729 SE2d 605) (2012).

The record reveals that Billy Wright suffered a fall that led to his death while a resident of a nursing home in Rome, Georgia. His widow, as administrator of his estate and as representative of "the wife and children of Billy Wright" (hereinafter "Wright"), filed a personal injury action against the nursing home, an employee of the nursing home, seven other entities, including Drumm, ten unidentified entities, and ten "John Does." The complaint alleged corporate negligence, ordinary negligence, violation of OCGA § 31-8-100 et seq. ("Bill of Rights for Residents of Long-term Care Facilities"), medical malpractice, fraud, and wrongful death. Drumm answered the complaint and moved to dismiss on the ground of lack of personal jurisdiction.

2

The trial court denied the motion, but certified its order for immediate review. We granted Drumm's application for interlocutory review.

On appeal, Drumm asserts that it has no contacts with Georgia, that any contacts that any of its subsidiaries have with Georgia cannot be attributed to Drumm because it does not completely control the subsidiaries, that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice, and that the trial court's ruling is "factually unsupported and legally incorrect."

Under Georgia's long-arm statute:

A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she . . .

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state; . . . .

OCGA § 9-10-91 (1) - (4). In this case, the plaintiff asserts personal jurisdiction only under section (1). Our courts construe this section "as reaching only 'to the maximum extent permitted by procedural due process.'" (Citations and punctuation omitted.) *Innovative Clinical &c. v. First Nat. Bank &c.*, 279 Ga. 672, 675 (620 SE2d 352) (2005). We must apply the following three-part test in determining the limits of due process:

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

(Citations and punctuation omitted.) *Crossing Park Properties*, supra, 316 Ga. App. at 475. This court considers

> the first two factors to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of

jurisdiction. If such minimum contacts are found, we move to the third prong of the test to consider whether the exercise of jurisdiction is reasonable — that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts.

(Citation and punctuation omitted.) Id. Our Supreme Court has held that "nothing in subsection (1) [of the Long Arm Statute] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." *Innovative Clinical*, supra, 279 Ga. at 675. "Moreover, a single event may be a sufficient basis if its effects within the forum are substantial enough. Such a result may obtain whether or not the non-resident is physically present in the state." (Citation and punctuation omitted.) *Crossing Park Properties*, supra.

In its motion to dismiss, Drumm presented the affidavit of Milton Patipa, the senior vice president of Fillmore Strategic Investors LLC ("FSI"), which is the sole member and shareholder of Drumm. Patipa averred that Drumm is a Delaware entity with its principal place of business in California, and that no shareholder or member of Drumm resides in Georgia. He averred further that: "Drumm is a parent company of GGNSC Holdings, LLC, which is the parent company to Golden Gate National Senior Care LLC, which is the parent company to GGNSC Equity Holdings LLC, which is the parent company to GGNSC Rome LLC d/b/a Golden Living Center

5

Rome;" Drumm's sole business is holding investments in healthcare companies including GGNSC Holdings LLC; Drumm has never and does not own, lease, or possess real property in Georgia; Drumm does not and has never had an office, address, telephone number, or bank account in Georgia; Drumm does not have and has never had employees or agents who work in Georgia; Drumm files a Georgia franchise tax return on behalf of several flow-through subsidiaries and pays a franchise tax, but not income tax; Drumm does not have a website or IP address; Drumm has never entered into any contract with Wright or any member of his family, has never committed a tort against Wright in Georgia, and has never committed any purposeful act or consummated any transaction in Georgia with Wright; Drumm has never and does not solicit business in Georgia; Drumm does not derive substantial revenue from goods used or services rendered in Georgia; Drumm has never and does not own or operate any nursing home facilities in Georgia, has never and does not make any decisions with regard to the care provided to residents of nursing home facilities in Georgia, has never and does not operate or have a direct ownership interest in GGNSC Rome LLC d/b/a Golden Living Center Rome, and does not exercise control over the day-to-day operations of that facility.

6

Wright asserts that Drumm "has [ ] direct connection to Georgia by involvement with the facility at issue in this matter," because it pays a franchise tax in Georgia and because of statements made by Patipa in a deposition taken in a West Virginia civil case in 2011. Wright points to Patipa's statement in that deposition that Drumm's vice presidents were "somewhat involved" in "healthcare operations." Wright argues further that Drumm's connection to Georgia is also established by Patipa's testimony that the operating budgets of the subsidiaries are reviewed by Drumm's board.

While we have found no cases directly addressing whether the filing of a consolidated Georgia tax return by a parent company on behalf of its subsidiaries is alone sufficient to establish minimum contacts for purposes of personal jurisdiction, other jurisdictions have held that it is not. While this authority is not controlling, it is persuasive. See, e.g., *Madison County Communications District v. Centurylink, Inc.*, 2012 U.S. Dist. LEXIS 180066 (II) (C) (N.D. Ala. 2012); *Newman v. Motorola, Inc.*, 125 FSupp.2d 717, 723 (D. Md. 2000). And Patipa's testimony in the West Virginia case, considered in context, does not rebut his affidavit in this case that

Drumm is the holding company and does not exercise control over its subsidiaries.[1] With regard to Drumm's vice presidents, Patipa explained that some of the Drumm officers' "responsibilities" in "healthcare operations" are by virtue of their employment with the subsidiary itself. And with regard to the subsidiaries' budgets, Patipa explained: "the operating entities below Drumm do prepare budgets, and I presume but do not have specific knowledge those budgets are at some consolidated level reviewed by the board." Even if this presumption were correct, Drumm's review of a consolidated budget of its subsidiaries does not mean that Drumm approved or provided input concerning the budgets to the extent that it exercised control over the nursing home. See, e.g., *Doe v. Unocal Corp.*, 248 F3d 915, 926 (II) (B) (3) (b) (i) (9th Cir. 2001) ("a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with

---

[1]Wright also relies on Patipa's deposition testimony that "there is a Drumm board of directors. They operate and are responsible for the healthcare entity." But Patipa refers to Drumm's status as the holding company for the healthcare entity *investment*, and explained that FSI, as the sole member and shareholder of Drumm, has some oversight at some level with respect to Drumm, but that he had no knowledge regarding "any of the facility administration level operations authority" below Drumm. Wright claims that an annual nursing home questionnaire shows that Drumm exerts control over the nursing home, but that questionnaire is not part of the record here on appeal.

8

the parent's investor status' . . . Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.'")

We have held that "neither the Due Process Clause nor traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction over a parent corporation if the parent's control over the subsidiary's activities is so complete that, the subsidiary is, in fact, merely a division or department of the parent." (Citations, footnote and punctuation omitted.) *Sol Melia*, *SA*, supra, 301 Ga. App. at 767 (2).

> So long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

(Citation and punctuation omitted.) *Vogt v. Greenmarine Holding, LLC*, 2002 U. S. Dist. LEXIS 21013 (II) (A) (1) (N.D. Ga. 2002). Drumm presented evidence that it

9

maintained a separate and distinct corporate entity from the nursing home which was three parent companies removed from Drumm, and that it had no control over the internal business operations and affairs of the nursing home; and Wright failed to point to "affidavits or documentary evidence" showing otherwise. Jurisdiction over Drumm therefore does not exist as there is no evidence that Drumm has "purposefully avail[ed] [itself] of the privilege of doing some act or consummating some transaction with or in the" state, and therefore no evidence that the causes of action raised by Wright are connected with such an act or transaction. See, e.g., *Yukon Partners*, supra, 258 Ga. App. at 5-8.

Because Drumm has met its burden of showing a lack of minimum contacts needed to support the exercise of personal jurisdiction, and Wright has presented no evidence showing the contrary, the trial court erred in denying Drumm's motion to dismiss. This conclusion is consistent with authority in other jurisdictions holding that ownership of a resident nursing home subsidiary by an out-of-state parent corporation without more is insufficient to obtain jurisdiction of the parent corporation. See *Schwartzberg v. Knoblock*, 98 So3d 173, 181 (VI) (Fla. Dist. Ct. App. 2012) ("For plaintiffs in nursing home litigation, basic principles of personal jurisdiction limit their ability to obtain jurisdiction of nonresident, upstream owners

of nursing homes and the nonresident officers and employees of such entities.");

*Walker v. THI of New Mexico &c.*, 801 FSupp2d 1128, 1158-1162 (III) (D. N. M. 2011) (parent company's sole shareholder status of subsidiary, its filing of "Income and Information Return for Pass-Through Entities," and "sponsorship of an employee benefit plan under ERISA to benefit employees of its subsidiaries are not, alone or together, sufficient minimum contacts with [the state and] reflect only a general and typical relationship between a parent corporation and its subsidiaries").

*Judgment reversed. Doyle, P. J., and McFadden, J., concur.*