**FOURTH DIVISION
DILLARD, P. J.,
BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
              **https://www.gaappeals.us/rules**

**February 19, 2025**

# In the Court of Appeals of Georgia

A24A1814. CASCADE AIRCRAFT MANAGEMENT, LLC v.
   VELAZCO et al.

DILLARD, Presiding Judge.

Geoffrey Velazco—along with the other surviving children and the estates of Antenor and Kathleen Velazco[1]—sued, among others, Cascade Aircraft Management, LLC[2] for wrongful death after their parents—both of whom were Georgia citizens—died in a plane crash in Colorado. The plaintiffs allege the crash was caused by faulty repairs that CAM performed on their parents' plane in Idaho. CAM filed a motion to dismiss the case for lack of personal jurisdiction, which the trial court

---

[1] These parties will be collectively referred to as "the plaintiffs" throughout the opinion.

[2] Cascade Aircraft Management, LLC will be referred to as "CAM" throughout the opinion.

denied. On appeal, CAM argues the trial court erred in (1) determining it could exercise personal jurisdiction over CAM under OCGA § 9-10-91 (*i.e.*, Georgia's Long Arm Statute) when it was merely an out-of-state provider of site-specific services; and (2) concluding that CAM "transacted any business in Georgia" within the meaning of the same statute. For the following reasons, we reverse.[3]

Viewed in the light most favorable to the plaintiffs (*i.e.*, the nonmoving parties),[4] the record shows that Lancair International, Inc.[5] produces and sells an "evolution kit," which consists of parts and instructions for constructing an experimental amateur-built aircraft. Robert Wolstenholme is the sole member of CAM, and is also the president, sole shareholder, and sole officer of Lancair. In 2015, the Velazcos ordered an evolution kit, and it was delivered to the Lancair facility in Oregon. Thereafter, Antenor traveled to that facility from Georgia and participated in a two-week "builder's assist program." After completing the program, Antenor

---

[3] Oral argument was held in this appeal on October 8, 2024, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case No. A24A1814 (Oct. 8, 2024), available at https://vimeo.com/1018523354.

[4] *See, e.g.*, *Am. Coll. Connection, Inc. v. Berkowitz*, 332 Ga. App. 867, 868 (775 SE2d 226) (2015).

[5] Lancair International, Inc. will be referred to as "Lancair" throughout the opinion.

arranged for the evolution kit to be sent to Florida, where he assembled it. Once it was assembled, the Velazcos registered the aircraft with the Federal Aviation Commission.

CAM is an aircraft and repair facility that services a variety of non-commercial aviation aircraft at its sole place of business in Idaho.[6] Approximately two years after the Velazcos' plane was assembled, Kathleen emailed Wolstenholme and Mark Jean (CAM's general manager) regarding numerous "squawks" (*i.e.*, problems) with it. In response, Jean indicated that CAM would provide her with an estimate for the repairs to help them "prioritize fixes." Wolstenholme also responded to Kathleen, noting: "Oh hi Kathy, yes you do have a mess and I am soooo sorry about that. We are going to do everything in our power to make it right with you."

On October 20, 2018, Kathleen brought the plane to CAM's facility in Idaho to discuss the problems she had been having with it so CAM could begin the necessary repairs. The aircraft remained in Idaho at CAM's facility until the repairs were complete. During that time, Jean regularly updated the Velazcos on the progress of the repairs and corresponded with them via email. CAM also sent Kathleen 13 invoices for the ongoing repairs, 12 of which were marked as paid as of June 2019. The invoices indicate that Kathleen wired the payments to CAM; and in total, the repairs cost more

---

[6] CAM's sole repair facility is in Idaho, but it was incorporated in 2012 in Pennsylvania.

than $86,000.

On June 17, 2019, Tim Plunkett—a pilot who worked with Kathleen to provide training hours on her aircraft for individuals pursuing a pilot's license—flew with her on a commercial flight to pick up the aircraft at CAM's facility in Idaho and return it to Georgia. But when they arrived, the repairs had not been completed. And because Kathleen had to return to Georgia, Plunkett agreed to stay in Idaho until the plane was ready. While there, Plunkett and Kathleen agreed that Plunkett would help train Jean to fly on her plane because Jean needed training hours in order to obtain his certification to fly an evolution aircraft. On June 23, 2019, Plunkett flew Kathleen's aircraft back to Georgia, and Jean accompanied him on the trip so he could obtain more training hours. And once in Georgia, Plunkett provided Jean with additional training hours before he returned to Idaho.

On June 16, 2021, the Velazcos were flying in their plane when the vibration of the aircraft caused the "left control rod attachment bolt to back out[.]" And according to the plaintiffs, as a result, "only the right flap deployed when [the Velazcos] were preparing the . . . aircraft for landing, causing a wing flap asymmetry that caused the plane to enter an extremely quick roll to the left, causing the descent and crash of the . . . aircraft." Tragically, the Velazcos were both killed in the crash.

Subsequently, on November 15, 2022, the plaintiffs sued CAM, Lancair, and others in the State Court of Henry County, Georgia, asserting negligence and breach-of-contract claims arising from the Valezcos' deaths. Relevant here, they alleged that CAM was "liable for its tortious acts and omissions, which include, but are not necessarily limited to, its negligent assembly, reassembly, inspection, maintenance, and/or repair of the subject aircraft by failing to use safety wire to secure the flap control rod attachment bolts on the wing assemblies of the subject aircraft." In response, CAM filed a special-appearance answer, as well as a motion to dismiss for lack of personal jurisdiction. The plaintiffs filed a response, contending the court had personal jurisdiction over CAM under OCGA § 9-10-91. The trial court denied CAM's motion following a hearing on the matter. This appeal by CAM follows.[7]

The Fourteenth Amendment's Due Process Clause to the Constitution of the United States "limits a state court's power to exercise jurisdiction over a defendant."[8]

---

[7] Although the trial court determined it had personal jurisdiction over both CAM and Lancair in the same order, Lancair is not a party in this appeal.

[8] *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 II (A) (141 SCt 1017, 209 LEd2d 225) (2021) (Kagan, J.); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 319 (66 SCt 154, 160, 90 LEd 95) (1945) ("Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant

And the seminal decision in this area of law is, of course, *International Shoe Co. v. Washington*,[9] which held that a court's authority over a defendant necessarily depends on that defendant "having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable' and 'does not offend traditional notions of fair play and substantial justice.'"[10] In fleshing out that formulation, the relevant caselaw "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'"[11] Importantly, a defendant who files a motion to dismiss for lack of personal

---

with which the state has no contacts, ties, or relations.").

[9] 326 U.S. 310 (66 SCt 154, 90 LEd 95) (1945).

[10] *Ford Motor Co.*, 592 U.S. at 358 II (A) (quoting *International Shoe*, 326 U.S. at 316-17).

[11] *Ford Motor Co.*, 592 U.S. at 358 II (A); *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (II) (A) (137 SCt 1773, 198 LE2d 395) (2017) (Alito, J.) (noting that "[t]he primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State"); ~~accord~~ *Walden v. Fiore*, 571 U.S. 277, 283-84 (134 SCt 1115, 188 LE2d 12) (2014) (Thomas, J.) (explaining that "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation" (punctuation omitted)); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 891 (II) (B) (131 SCt 2780, 180 LE2d 765 (2011) (Kennedy, J.) (explaining that the exercise of personal jurisdiction "focus[es] upon the relationship between the defendant, the forum, and the litigation" (punctuation omitted)).

jurisdiction has "the burden of proving lack of jurisdiction."[12] Even so, a motion to dismiss for lack of personal jurisdiction "must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction."[13] And when the outcome of the motion "depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record."[14] Significantly, to the extent a defendant's evidence "controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence."[15] In fact, we owe no

---

[12] *Berkowitz*, 332 Ga. App. at 868; *accord Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990); *see Easterling v. Easterling*, 231 Ga. 90, 90 (1) (200 SE2d 267) (1973) ("In a plea to the jurisdiction the burden is upon the defendant to establish the averments of his plea."); *Smith v. Smith*, 223 Ga. 551, 551 (156 SE2d 916) (1967) (explaining that, as to personal jurisdiction, the "burden is upon the defendant to establish the averments of his plea); *J.B. Pyron & Son v. Ruohs*, 120 Ga. 1060, 1062 (48 SE 434) (1904) ("[T]he plea of non-residence in the county where the suit is brought must not only deny the defendant's residence in that county, but also set forth his residence in another county. He must swear to the plea, and yet, after having sworn to it, he must take the burthen of proving it.").

[13] *Sol Melia, SA v. Brown*, 301 Ga. App. 760, 761 (688 SE2d 675) (2009); *accord Beasley*, 260 Ga. at 420; *Brandenburg v. City of Vidalia*, 366 Ga. App. 51, 61 (2) (b) (880 SE2d 625) (2022).

[14] *Sol Melia,* 301 Ga. App. at 761 (punctuation omitted); *accord Beasley*, 260 Ga. at 420; *Classic Com. Servs., Inc. v. Baldwin*, 336 Ga. App. 183, 183 (784 SE2d 44) (2016).

[15] *Sol Melia*, 301 Ga. App. at 761 (punctuation omitted); *accord Beasley*, 260 Ga. at 420; *Baldwin*, 336 Ga. App. at 183.

deference to the trial court's judgment "because the motion was decided on the basis of the written submissions."[16] But any factual disputes raised by the evidence "must be resolved in the plaintiffs' favor."[17] With these guiding principles in mind, we turn now to CAM's specific claim of error.

Although CAM characterizes its challenge to the trial court's denial of its motion to dismiss for lack of personal jurisdiction as two separate claims of error, both essentially contend the trial court erred in finding that it had personal jurisdiction under OCGA § 9-10-91 (1) because CAM transacted business in Georgia when it provided only a site-specific service outside of this state. We agree.

While there are several bases for exercising personal jurisdiction over a

---

[16] *Sol Melia*, 301 Ga. App. at 761; *see Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 258 Ga. App. 1, 2 (572 SE2d 647) (2002) ("[I]f a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard" (punctuation omitted)). Although the trial court held a hearing on CAM's motion to dismiss, it consisted only of oral argument by the attorneys, and no evidence was presented. So, essentially, the trial court decided this case based on the written submissions of the parties. *See Intercontinental Servs. of Delaware, LLC v. Kent,* 343 Ga. App. 567, 568 (807 SE2d 485) (2017) ("If the trial court conducts an *evidentiary* hearing, it may resolve disputed factual issues, and we will show deference to those findings." (punctuation omitted) (emphasis supplied)).

[17] *Sol Melia*, 301 Ga. App. at 761; *see Beasley*, 260 Ga. at 420 ("If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff.").

nonresident defendant under OCGA § 9-10-91,[18] the plaintiffs argue (and the trial court found) that it has personal jurisdiction over CAM under subsection one of the statute, which provides:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she . . . *[t]ransacts any business within this state.*[19]

Even so, the Supreme Court of Georgia has explained that "nothing in the Long Arm Statute requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State."[20] Indeed, Georgia permits the assertion of long-arm jurisdiction over nonresident defendants "based on business conducted through postal, telephonic, and Internet contacts."[21]

---

[18] *See* OCGA § 9-10-91 (1)-(6).

[19] OCGA § 9-10-91 (1) (emphasis supplied).

[20] *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 265 (2) (719 SE2d 489) (2011); *accord Sullivan v. Bunnell*, 340 Ga. App. 283, 286 (1) (797 SE2d 499) (2017); *Weathers v. Dieniahmar Music, LLC*, 337 Ga. App. 816, 820 (788 SE2d 852) (2016).

[21] *Sullivan*, 340 Ga. App. at 286 (1) (punctuation omitted); *accord Berkowitz*, 332 Ga. App. at 871; *see Home Depot Supply, Inc. v. Hunter Mgmt, LLC*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008) (holding that "even when a nonresident defendant has no physical presence in Georgia, intangible contacts, such as telephone communications,

Furthermore, our Supreme Court has explained that

> jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has *purposefully done some act or consummated some transaction in this state*, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice."[22]

And we have explained that the first two prongs are "analyzed to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction."[23] If such minimum contacts exist, we then "analyze the third prong to consider whether the exercise of jurisdiction is 'reasonable'—that is, to ensure that it does not result solely from 'random,' 'fortuitous' or 'attenuated' contacts."[24] To be sure, the application of the minimum-contacts rule will "vary with

---

can be sufficient to establish 'minimum contacts' which meet the constitutional standard for the exercise of personal jurisdiction").

[22] *Walker*, 290 Ga. at 269 (2) (punctuation omitted) (emphasis supplied); *accord Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517-18 (631 SE2d 734) (2006).

[23] *Sullivan*, 340 Ga. App. at 286 (1) (punctuation omitted); *accord Berkowitz*, 332 Ga. App. at 870.

[24] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Weathers*, 337 Ga. App. at 820 (1); *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (IV) (A) (143 SCt 2028, 216 LE2d 815) (2023) (Gorsuch, J.) (noting that, "[p]ut simply, even without agreeing to be present, the out-of-state corporation [in *International Shoe*] was still amenable to suit in Washington consistent with fair play and substantial justice,"

10

the quality and nature of the defendant's activity";[25] but this inquiry is principally concerned with "protect[ing] the liberty interest of the nonresident defendant, not the interests of the plaintiff."[26] It is essential, then, that there be "some act by which the defendant purposefully avails [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[27] Here, no such act exists.

Importantly, in 2005, the Supreme Court of Georgia held—in *Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames*,[28] ("*Innovative Clinical*")—that "OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in

---

so "an out-of-state corporation that has not consented to in-state suits may also be susceptible to claims in the forum State based on the quality and nature of its activity" in the forum." (cleaned up)).

[25] *Sullivan*, 340 Ga. App. at 286 (1) (punctuation omitted); *accord Berkowitz*, 332 Ga. App. at 870.

[26] *Walden v. Fiore*, 571 U.S. 277, 290 (III) n.9 (134 SCt 1115, 188 LEd2d 12) (2014) (Thomas, J.).

[27] *Sullivan*, 340 Ga. App. at 286-87 (1) (punctuation omitted); *accord Berkowitz*, 332 Ga. App. at 870.

[28] 279 Ga. 672 (620 SE2d 352) (2005).

this State . . . to the maximum extent permitted by procedural due process."[29] In doing

so, our Supreme Court overruled "all prior cases that fail to accord the appropriate

breadth to the construction of the 'transacting any business' language of OCGA § 9-

10-91 (1)."[30]

Over a decade later, in *Intercontinental Servs. of Delaware, LLC v. Kent*,[31]

("*Intercontinental*"), this Court acknowledged our Supreme Court's holding in

*Innovative Clinical*, but went on to explain that—as to the amount of due process

required by OCGA § 9-10-91—"limits do exist, and this Court is compelled to

recognize and enforce them."[32] Additionally, we also recognized that "this body of

law continues to evolve in light of the growth of the service sector in the United States

---

[29] *Id*. at 675; *see Intercontinental*, 343 Ga. App. at 571 (1) ("Prior decisions of this Court and the Georgia Supreme Court of Georgia have given broad reach to this provision, holding that it extends the jurisdiction of Georgia courts to the maximum limits permitted by procedural due process." (punctuation omitted)).

[30] *Innovative Clinical*, 279 Ga. at 676. In *Innovative Clinical*, the Supreme Court of Georgia did not identify any specific case that it was overturning. So, as to pre-2005 cases we cite in this opinion finding a *lack* of personal jurisdiction, the extent of their precedential value is not entirely clear. Even so, this opinion primarily relies on pre-2005 cases that *have* been subsequently cited with approval.

[31] 343 Ga. App. 567 (807 SE2d 485) (2017).

[32] *Id*. at 571 (1).

and the advent of advanced communication and information technologies."[33] Particularly relevant here, *Intercontinental* further explained that "for purposes of personal jurisdiction analysis, this Court's prior decisions have drawn a critical distinction between manufacturers and sellers of a physical product and persons or entities that[,] [as here], provide a site-specific service, even if such service involves or relates to products that will travel to Georgia."[34]

So, while physical presence is not *required* for a foreign company to transact business in Georgia, the following is undisputed in this case: (1) CAM was incorporated in Pennsylvania; (2) its *sole* place of business is in Idaho; (3) it does not and never has had any offices in Georgia; (4) it does not and never has owned any property in Georgia; (5) none of CAM's members, directors, officers, or employees reside in Georgia; (6) CAM does not have a registered agent in Georgia; (7) CAM has never repaired any planes in Georgia; and (8) CAM advertises online solely through an informational website, but has never specifically directed its advertising or any marketing efforts toward Georgia specifically.[35]

---

[33] *Id.* at 572 (1).

[34] *Id.*; *see infra* note 35.

[35] *See Intercontinental*, 343 Ga. App. at 569, 572-74 (1) (finding Georgia lacked personal jurisdiction over a foreign company, in part, because it was a Delaware

But perhaps most significantly, CAM never initiated *any* contact with the Valezcos about repairing their plane; and it did not actively seek out their business or any business in Georgia.[36] To the contrary, *Kathleen* first contacted Wolstenholme and Jean about the problems with her plane, and there is no evidence that she did so based on any marketing by CAM directed toward her or Georgia citizens generally.[37] Indeed,

limited liability company, it was not registered to do business in Georgia, it maintains no property or employees in Georgia, and it provided a site-specific service in another state). *Cf. Ford Motor Co.*, 592 U.S. at 365-66 (II) (B) (noting that because the defendant "had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States . . . there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction.") (punctuation and citation omitted)).

[36] *See Walden*, 571 U.S. at 284-85 (II) (B) (1) (explaining that, to establish that an out-of-state defendant transacted business in the forum state, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" regardless of how "significant the plaintiff's contacts with the forum state may be"); *McDonnell v. Roy E. Beatty & Assocs., Inc.*, 203 Ga. App. 807, 808 (1) (418 SE2d 95) (1992) ("We cannot justify the imposition of jurisdiction over the nonresident defendant because of the unilateral acts of the [plaintiff], over which the defendant had no control."); *see also LG Chem, Ltd. v. Lemmerman*, 361 Ga. App. 163, 167 (1) (863 SE2d 514) (2021) ("Purposeful availment exists in the circumstance where a nonresident purposefully directs its activities toward forum residents." (punctuation omitted)).

[37] It is undisputed that CAM merely has a passive, informational website, and this Court has held that such a website is insufficient to establish personal jurisdiction. *See Intercontinental*, 343 Ga. App. at 576 (2) ("[B]ecause of the passive nature of [the foreign defendant's] website and the absence of other marketing activities directed at Georgia, the record does not support the trial court's finding that [it] regularly solicits

14

the relevant evidence shows that, on September 19, 2018, Kathleen emailed Wolstenholme and Jean to inform them of the problems she was having with the plane, and Jean replied to her a few hours later. The plaintiffs appear to find it relevant that Wolstenholme—who has significant leadership and ownership connections to both CAM and Lancair—also responded to Kathleen's email. And they repeatedly allege that Lancair "directed" the Velazcos (and all Georgia citizens) to hire CAM to perform aircraft repairs. But nothing they cite in the record substantiates that claim.[38] And even if they did, the plaintiffs fail to provide any legal authority suggesting that

business in Georgia"); *Berkowitz*, 332 Ga. App. at 871 ("[A] passive [w]eb site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." (punctuation omitted)).

[38] To support their contention that Lancair directed the Velazcos to have their plane repaired by CAM, the plaintiffs cite to the following: (1) a one-page document that *appears* to be a screenshot of Lancair's website that merely identifies four companies (including CAM), along with their contact information, but does not direct anyone to hire any of the companies for any particular service; (2) one paragraph of their complaint, which is not evidence and does not reference the Velazcos specifically; and (3) a text message from Wolstenholme to Kathleen *responding* to her email about the plane's problems but not mentioning either Lancair or CAM specifically. Given the Velazcos' history with Lancair and Wolstenholme, it is certainly possible that Wolstenholme recommended CAM to them for the repairs, but there is simply no evidence of that in the appellate record. And even if this actually occurred, the plaintiffs cite no legal authority for the proposition that a mere recommendation from one out-of-state vendor to another one somehow results in a party being able to exercise personal jurisdiction over the recommended party in another state.

*Lancair* recommending CAM to the Velazcos has any bearing on whether *CAM* has purposefully done some act or consummated some *purposeful* transaction in this state.[39]

> In denying CAM's motion to dismiss, the trial court noted the following:

> Here, [p]laintiffs indicate that CAM sent invoices of the work completed, which amounted to approximately $86,000[ ], to the [Velazcos'] residence in Georgia. Therefore, CAM should have known that the aircraft would likely be registered, owned, and operated in Georgia. This [c]ourt finds that due to CAM receiving substantial revenue for their work completed on the aircraft and the reasonable foreseeability that the aircraft would be utilized in Georgia, CAM should reasonably anticipate being haled into a Georgia court. Thus, this [c]ourt finds that CAM has enough minimum contacts with the state to establish specific personal jurisdiction.

In doing so, the trial court erred. As we have previously explained, a foreign defendant's "knowledge that [a] [plaintiff] planned to use [a] plane in Georgia provide[d] no basis on which to attribute the [plaintiff's] acts to the defendant."[40] Furthermore, *unless* the plaintiffs can establish that CAM intentionally took some

---

[39] *See supra* notes 27 & accompanying text and 36; *infra* 41.

[40] *McDonnell*, 203 Ga. App. at 809; *see Intercontinental*, 343 Ga. App. at 573 (1) (explaining that this Court has "emphasized that mere knowledge on the part of the [a foreign] defendant that certain items or materials will find their way to Georgia is an insufficient basis for exercising personal jurisdiction over that defendant").

purposeful action or consummated a transaction in Georgia, as required by OCGA § 9-10-91 (1), it does not matter that the out-of-state service the Velazcos sought was expensive.[41] Given the foregoing, the sole relevant basis the trial court cited in support of imposing personal jurisdiction over CAM was that, after the Velazcos unilaterally hired it to repair their plane, CAM mailed them bills for services rendered.

Now, on appeal, the plaintiffs contend that—in addition to mailing the invoices—CAM also regularly updated Kathleen about the repairs electronically during the months when the aircraft was at its facility in Idaho. But as we emphasized

---

[41] *See Sullivan*, 340 Ga. App. at 286 (1) (explaining that personal jurisdiction over a foreign defendant "exists on the basis of transacting business in this State if (1) *the nonresident defendant has purposefully done some act or consummated some transaction in this State*, (2) if the cause of action arises from or is connected with such act or transaction, *and* (3) if the exercise of jurisdiction by the courts of this State does not offend traditional notions of fairness and substantial justice. (punctuation omitted) (emphasis supplied)); *Intercontinental*, 343 Ga. App. at 571 (1) (same). We are not suggesting that the amount of revenue a foreign defendant derives from a Georgia resident (or residents) is never relevant to the overall personal-jurisdiction analysis. To the contrary, as explained in *Intercontinental*, 343 Ga. App. at 575 (2), OCGA § 9-10-91 (3)—which we need not address in this case—provides that "[a] court of this state may exercise personal jurisdiction over any nonresident as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or *derives substantial revenue from goods used or consumed or services rendered in this state*." (punctuation omitted)(emphasis supplied)).

in *Intercontinental*, the body of law at issue "continues to evolve in light of the growth of the service sector in the United States and the advent of advanced communication and information technologies."[42] And here, the plaintiffs are contending that we should confer personal jurisdiction over a foreign company that merely mailed invoices to and communicated electronically with Georgia citizens who, *unsolicited*, actively sought out and hired that company for its specialized, on-site services. If we accepted this argument, then nearly every foreign entity in the country would be forced to choose between turning down Georgia business that it did not actively seek out or consenting to personal jurisdiction.[43] This, we will not do.

Additionally, in asserting the trial court has personal jurisdiction over CAM, the plaintiffs find it relevant that Jean accompanied Plunkett when he flew the Velazcos' aircraft back to Georgia after the repairs were completed. But there is no evidence that Jean's presence on that trip had any connection to the business transaction at issue or

---

[42] *Intercontinental*, 343 Ga. App. at 572 (1).

[43] *See Walden*, 571 U.S. at 290 n.9 (noting that "this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State . . . We leave questions about virtual contacts for another day."); *see also* Jayci Noble, *Personal Jurisdiction and the Internet: A Shift in the International Shoe Analysis for Users of E-Commerce and Peer-to-Peer Websites*, 42 S. Ill. U. L. J. 521, 529 (2018) (noting that "[t]he doctrine of personal jurisdiction and courts' interpretations of it have evolved over the twentieth century to adapt and accommodate society as it constantly progresses").

was some sort of arrangement with the Velazcos for CAM to return their plane to Georgia. To the contrary, the undisputed evidence shows that Jean was on the flight for the sole purpose of taking *private* flying lessons from Plunkett. Presumably, because this flight was solely a personal transaction for flight lessons between two individuals, the trial court did not mention it as a basis for imposing personal jurisdiction over CAM.[44]

Suffice it to say, our prior decisions have drawn a "critical distinction between manufacturers and sellers of a physical product and persons or entities that provide a *site-specific* service, even if such service involves or relates to products that will travel to Georgia."[45] And this case clearly involves a single, isolated transaction with Georgia residents for a site-specific out-of-state service, which did not place a product in the stream of commerce to Georgia or to any other state.[46] Put simply, we decline to hold

---

[44] *See McDonnell*, 203 Ga. App. at 809 (1) (explaining that evidence that the "president of the defendant corporation accompanied the owner and president of the lessee of the airplane on several *pleasure trips* to Georgia . . . in no way established a course of conduct by the defendant corporation and in no way resulted in substantial revenue to the defendant corporation" (emphasis supplied)).

[45] *Intercontinental*, 343 Ga. App. at 572 (1) (emphasis supplied).

[46] *Cf. Lemmerman,* 361 Ga. App. at 169 (1) (holding that trial court had personal jurisdiction over a foreign defendant who sold lithium batteries in Georgia when it "engaged in regular, continuous, systematic, and substantial business in Georgia; solicited business in Georgia and targeted marketing specific to Georgia; had a regular

that the trial court has personal jurisdiction over CAM merely because it accepted the Velazcos' unsolicited business involving a single, site-specific service that took place solely in Idaho, billed them for that service, and provided updates on that service using

plan to distribute its products in Georgia; derived millions of dollars a year from the sale of its products in Georgia; and distributed and placed its 18650 lithium-ion batteries into the stream of commerce in Georgia"); *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 139 (1) (a) (661 SE2d 185) (2008) (affirming the trial court's denial of foreign company's motion to dismiss for lack of personal jurisdiction when "[it] shipped its products to [another company] with the expectation that it would be installed in [plane] engines for re-sale to other locales across the country, including Georgia"), *disapproved of on other grounds by Bowen v. Savoy*, 308 Ga. 204 (839 SE2d 546) (2020); *Showa Denko K. K. v. Pangle*, 202 Ga. App. 245, 247-48 (2) (414 SE2d 658) (1991) (affirming a trial court's judgment that it had personal jurisdiction over a foreign company when it deliberately and purposefully introduced its product into the stream of commerce knowing it would be sold in every state, including Georgia); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (III) (100 SCt 559, 62 LE2d 490) (1980) ("[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *Power Guardian, LLC v. Directional Energy Corp.*, 904 FSupp2d 1313, 1321 (II) (C) (1), 1325 (II) (D) (1) (M.D. Ga. 2012) (holding that a distributor and manufacturer of generators transacted business in Georgia when they, *infer alia*, purposefully and intentionally sold generators to a specific Georgia company and manufactured generators specifically for a Georgia company, respectively, and the manufacturer traveled to Georgia to test the unit for sufficient power").

the internet.[47] As we explained in *Intercontinental*, while OCGA § 9-10-91 "extends

[47] *See Bradlee Mgmt. Servs., Inc. v. Cassells,* 249 Ga. 614, 618 (292 SE2d 717) (1982) (holding foreign defendant did not have sufficient minimum contacts with Georgia to establish personal jurisdiction when, *inter alia*, it had not regularly done or solicited business in the State of Georgia and had not engaged in any persistent course of conduct in this state); *Intercontinental*, 343 Ga. App. at 573-74 (1) (holding that Georgia lacked personal jurisdiction over foreign defendant when its services were provided only in Delaware by its employees, who are all located in Delaware; it does not manufacture or sell any product; it never takes title to any of the products it handles; although it performs ministerial tasks like filling out bills of lading for shipments it loads on behalf of its customers, it does not arrange or pay for such shipments, as that is solely the responsibility of its customers; its website is not interactive; it does not advertise directly in Georgia; and while products it loads make their way to Georgia, such activities cannot be characterized as purposeful contact with Georgia); *McDonnell*, 203 Ga. App. at 808 (1) ("We cannot justify the imposition of jurisdiction over the nonresident defendant because of the unilateral acts of the [plaintiff], over which the defendant had no control."). *Cf. Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76, 80-82 (1) (752 SE2d 135) (2013) (holding the trial court had personal jurisdiction over a foreign defendants when its agent had an office in Atlanta, the defendant had a long-standing relationship with the agent that spanned a number of years, and the insurance policy at issue was issued and brokered through defendant's Atlanta offices); *Paxton v. Citizens Bank & Tr. of W. Ga.*, 307 Ga. App. 112, 119 (1) (704 SE2d 215) (2010) (holding that Alabama company transacted business in Georgia when it was registered to do business in Georgia, its members understood that their company was formed for the sole purpose of developing property in this state, and they knew they were dealing with a Georgia lender); *ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 530, 534-35 (1) (680 SE2d 571) (2009) (finding foreign company transacted business in Georgia when it intentionally *sought business in this state*; referred to a Georgia resident as its agent; and the company's actions and assurances enabled the Georgia agent to do business in Atlanta; receive checks; fail to send proceeds from a sale to a finance company, and fail to give plaintiff the title to the truck at issue); *Home Depot Supply, Inc.*, 289 Ga. App. at 286, 290 (holding Georgia had personal jurisdiction over foreign company defendant when it *initiated contact with the Georgia plaintiff*, payment was handled by defendant, and there was a *two-year* course of dealing between the parties).

the jurisdiction of Georgia courts to the maximum limits permitted by procedural due process[,] . . . such limits do exist, and this Court is compelled to recognize and enforce them."[48] We do so here.

For all these reasons, we reverse the trial court's denial of CAM's motion to dismiss for lack of personal jurisdiction.

*Judgment reversed. Brown and Padgett, JJ., concur.*

---

[48] *Intercontinental*, 343 Ga. App. at 571 (1).